No. 23-726 – *Foster v. PrimeCare Medical of West Virginia, Inc.*

Armstead, Justice, dissenting:

**FILED**

**May 27, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Petitioner Brittany Foster ("Petitioner") filed a workers' compensation claim, alleging that she contracted COVID-19 during the course of her employment with Respondent PrimeCare Medical of West Virginia, Inc. ("PrimeCare"). The Intermediate Court of Appeals of West Virginia ("ICA") ruled that Petitioner's claim was not compensable after finding that Petitioner failed to satisfy the factors contained in West Virginia Code § 23-4-1(f). *PrimeCare Med. of W. Va., Inc. v. Foster*, No. 23-ICA-266, 2023 WL 7203395 *4 (W. Va. Ct. Nov. 1, 2023). I would affirm the ICA's decision because Petitioner (1) did not clearly establish that she contracted COVID-19 during the course of her employment; and (2) failed to submit any evidence on one of the factors in West Virginia Code § 23-4-1(f). Therefore, I dissent from the majority's ruling.

## A. Received in the Course of Employment

Under West Virginia's workers' compensation statutory framework, for a claim to be held compensable, three elements must coexist: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. *See* Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). The claimant has the burden of proving the elements of his or her workers' compensation claim. *See* Syl. Pt. 2, *Sowder v. State Workmen's Comp. Comm'r*, 155 W. Va. 889, 189 S.E.2d 674 (1972). Petitioner had potential exposure to COVID-19 both inside and outside of her workplace during the relevant timeframe. Specifically, Petitioner was potentially

1

exposed to COVID-19 at work during a July 30, 2020, staff meeting. Additionally, Petitioner took part in administering COVID-19 tests to inmates located in the medical unit of the Southern Regional Jail from July 27, 2020, through July 31, 2020. While a few of these inmates tested positive for COVID-19, Petitioner was wearing full personal protective equipment while administering these tests, including a medical grade N-95 mask, gloves, and a protective gown. Following these potential workplace exposures, Petitioner engaged in several non-work-related activities, including an August 1, 2020, trip to a drive-through zoo with four family members. Petitioner also went to the emergency room on August 4, 2020. Notably, Petitioner was tested for COVID-19 during the August 4, 2020, emergency room visit. This test, which occurred five days after her potential workplace exposure during the staff meeting, was negative. She took a second COVID-19 test on August 11, 2020. This test, which occurred seven days after Petitioner's potential non-work exposure in the emergency room, was positive.

Additionally, Dr. Ajay Anand, who diagnosed Petitioner with COVID-19 and completed her "Employees' and Physicians' Report of Occupational Injury or Disease" workers' compensation form, wrote "N/A" in response to whether the condition was a direct result of her employment. Petitioner completed a second workers' compensation report of injury form a few months after submitting the first form. The physician's portion of the second form was completed by Dr. Matthew Haag, who wrote "non-occupational condition" in response to whether the condition was a direct result of employment.

2

Two other medical opinions in the record are also relevant to this issue. Petitioner underwent an IME with Dr. Bruce Guberman, who found that her contraction of COVID-19 was an "occupational disease" based on the medical records and Petitioner's medical history. However, Dr. Guberman conceded that there was not a medical or scientific test to determine the exact source of Petitioner's COVID-19 infection. Finally, Dr. Thomas Parker issued a medical review concluding that Petitioner's COVID-19 infection was not an occupational disease.

In sum, Petitioner was potentially exposed to COVID-19 both inside and outside of her workplace during the relevant timeframe. Dr. Anand and Dr. Haag were Petitioner's treating physicians and neither considered her contraction of COVID-19 to be related to her occupation. Dr. Parker agreed with this assessment. While Dr. Guberman disagreed, the weight of the medical opinions in the record did not find that Petitioner's COVID-19 infection was related to her occupation. Therefore, in addition to the rationale relied upon by the ICA, this Court could have affirmed the ICA's ruling by concluding that Petitioner did not satisfy her burden of establishing that she contracted COVID-19 "in the course of employment." *Barnett*, 153 W. Va. at 796, 172 S.E.2d at 698.[1]

---

[1] While the ICA's decision to deny compensability was based on its conclusion that Petitioner failed to satisfy one of the factors in West Virginia Code § 23-4-1(f), this Court may affirm its ruling on any basis supported by the record. *See* Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

**B. West Virginia Code § 23-4-1(f)**

The ICA focused on whether Petitioner satisfied the six-factor statutory test for a workers' compensation claim involving an "ordinary disease of life to which the general public is exposed outside of the employment[.]" W. Va. Code § 23-4-1(f). This six-factor test provides, in relevant part:

> No ordinary disease of life to which the general public is exposed outside of the employment is compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease is considered to have been incurred in the course of, or to have resulted from, the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction[.]

W. Va. Code § 23-4-1(f).

As noted by the majority opinion, this case was before the ICA on two occasions. The Board of Review ("BOR") initially held the claim compensable and PrimeCare appealed to the ICA. The ICA vacated the BOR's order after finding that the BOR did not sufficiently address the factors contained in West Virginia Code § 23-4-1(f).

4

*PrimeCare Medical of W. Va., Inc. v. Foster*, 247 W. Va. 590, 885 S.E.2d 171 (W. Va.

App. 2023) ("*PrimeCare I*"). In so ruling, the ICA specifically focused on the fourth factor

in West Virginia Code § 23-4-1(f), explaining that

> PrimeCare introduced into the record an article published on
> March 10, 2021, titled *Risk Factors Associated with SARS-
> CoV-2 Seropositivity Among US Health Care Professionals*.
> This article "found that the factors presumed to be most
> associated with [COVID-19] infection risk among [health care
> personnel], including workplace role, environment, and caring
> for [COVID-19] patients, were not associated with increased
> [health care personnel] risk of [COVID-19] infection." As the
> only medical study in the record, this evidence cuts against a
> finding of compensability under factor four. Ms. Foster bears
> the burden to prove her case and refute contrary evidence
> placed into the record such as this article. Mere speculation that
> a medical professional is at a greater risk of exposure than
> those outside of such employment is insufficient to satisfy
> factor four. Evidence must be presented, and the BOR must
> address this evidence in meaningful findings of fact and
> conclusions of law.

*Id.*, 247 W. Va. at 595, 885 S.E.2d at 176 (internal footnote omitted).

On remand to the BOR, Petitioner failed to introduce any evidence on the

fourth factor addressing whether a medical professional is at a greater risk of exposure than

those outside of such employment. However, the BOR again found that Petitioner's claim

was compensable. In so ruling, the BOR was critical of the medical study introduced by

PrimeCare.[2] PrimeCare again appealed the BOR's ruling to the ICA, and the ICA, once

again, reversed the BOR. The ICA found that because Petitioner

---

[2] The BOR found that because the study was limited to subjects in metropolitan
areas within three discrete zip codes, it had little relevance to a claimant who lived and
worked in rural West Virginia.

5

has failed to put forth any evidence to establish that her exposure to COVID-19 positive individuals presented a greater hazard of contracting COVID-19 than that to which workman outside of the employment (under West Virginia Code § 23-4-1(f)), we find that the BOR was clearly wrong in finding her diagnosis of COVID-19 compensable. Simply stated, Ms. Foster did not meet her burden in proving her claim.

*PrimeCare Med. of W. Va., Inc. v. Foster*, 2023 WL 7203395, at *4.

The majority opinion is critical of the ICA's ruling, finding that (1) the ICA overly relied on the fourth factor of West Virginia Code § 23-4-1(f) instead of focusing on all of the circumstances surrounding Petitioner's claim; and (2) the ICA failed to consider the weaknesses of the study that PrimeCare submitted.

The majority correctly notes that West Virginia Code § 23-4-1(f) requires "consideration of all the circumstances" of a particular case. *Id.* When considering all of the circumstances of Petitioner's case, I would find that her claim was not compensable. First, one of the main inquires under West Virginia § 23-4-1(f) is whether the condition can be "fairly traced to the employment as the proximate cause[.]" *Id.* As discussed above, Petitioner was potentially exposed to COVID-19 both inside and outside of her workplace during the relevant timeframe and the clear weight of the expert medical opinions in the record did not attribute her COVID-19 infection to her occupation. Therefore, based on my review of the record, I would find that Petitioner failed to establish that her COVID-19 infection can be "fairly traced to the employment as the proximate cause[.]" *Id.*

Next, even under the majority's interpretation of West Virginia Code § 23-4-1(f), the fourth factor, "that [the occupational disease] does not come from a hazard to

6

which workmen would have been equally exposed outside of the employment," must be given substantial weight. *Id.* Petitioner failed to submit any evidence on the fourth factor, despite the ICA expressly giving her the opportunity to do so in *PrimeCare I.* Because Petitioner failed to submit any evidence on this factor, it weighs strongly against her in this case. While the majority notes certain criticisms of the study introduced by PrimeCare, Petitioner has the burden of proving her claim. She did not submit any evidence on this issue. Thus, regardless of the relative strength or weakness of the study introduced by PrimeCare, the lack of any evidence submitted by Petitioner on this issue means that the fourth factor clearly weighs against a finding of compensability.

Finally, I emphasize that the clear purpose of West Virginia Code § 23-4-1(f) is to limit a worker's ability to recover after being exposed to everyday diseases of ordinary life, such as COVID-19 or the flu. Because the clear purpose of the statute is to limit such claims, it is crucial that a claimant satisfy all six-factors included in the statute. By determining that Petitioner's claim was compensable under West Virginia Code § 23-4-1(f) despite the fact that she failed to offer *any* evidence on the fourth factor, the majority glosses over the purpose of this statutory provision, and, in doing so, potentially opens the door to an influx of claims arising from everyday diseases of ordinary life.

When weighing all of the circumstances of this case, I believe Petitioner failed to satisfy her burden of establishing the compensability of her claim because (1) she had potential COVID-19 exposure outside of the workplace during the relevant timeframe; (2) the clear weight of the medical opinions in the record did not support a finding that her

7

COVID-19 infection was related to her occupation; and (3) she failed to introduce any evidence on the fourth factor of West Virginia § 23-4-1(f). Based on the foregoing, I respectfully dissent from the majority opinion. I am authorized to state that Justice Bunn joins me in this dissent.